STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**

**January 14, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **N.B., I.L., C.C.-1, and C.C.-2**

**No. 18-0792** (Ohio County 18-CJA-27-JPM, 18-CJA-28-JPM, 18-CJA-29-JPM, 18-CJA-30-JPM)

## MEMORANDUM DECISION

Petitioner Mother J.N., by counsel Michael B. Baum, appeals the Circuit Court of Ohio County's August 9, 2018, order terminating her parental rights to N.B., I.L., C.C.-1, and C.C.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Joseph J. Moses, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without granting her an improvement period or considering less-restrictive alternatives.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2018, the DHHR filed a child abuse and neglect petition against petitioner regarding her drug abuse. Specifically, the DHHR alleged that in March of 2018, Child Protective Services ("CPS") and law enforcement responded to petitioner's home to conduct an investigation and found petitioner under the influence of drugs with the children in her care. Petitioner's boyfriend was discovered to be hiding in the home and he was arrested based upon a warrant for his arrest from Missouri. The search also revealed drug paraphernalia throughout the home including thirteen hypodermic needles, one of which contained a brown liquid. The DHHR alleged that petitioner's drug use impaired her ability to properly parent the children or provide for their well-being and that she exposed the child to inappropriate people and unsafe situations. The DHHR further alleged that petitioner had a history of mental illness, exposing her children

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials, we will refer to them as C.C.-1 and C.C.-2, respectively.

1

to inappropriate persons, and criminal drug activity and that these issues continued unabated despite the provision of services designed to remedy those issues.[2]

Later that month, petitioner waived her preliminary hearing and the circuit court ordered her to submit to random drug screens. However, immediately following the hearing, petitioner was arrested upon a warrant from Pennsylvania for a drug-related offense. Petitioner was released from incarceration in May of 2018, but was arrested only days later upon a warrant from Ohio on charges of possession of a controlled substance, trafficking in drugs, and charges related to possession of drug abuse instruments after she was found unconscious in a vehicle while under the influence of drugs.

The circuit court held an adjudicatory hearing in May of 2018. Petitioner stipulated to the allegations contained in the petition and requested a post-adjudicatory improvement period. The circuit court held petitioner's motion in abeyance pending a multidisciplinary team ("MDT") meeting. Although the MDT met to discuss petitioner's request for an improvement period, no consensus could be reached due to petitioner's chronic history of drug abuse, lack of response to services, and her continued drug abuse and criminal activity throughout the proceedings.

In July of 2018, the circuit court held a dispositional hearing. Petitioner failed to attend and her counsel requested a continuance, proffering that petitioner's mother indicated that petitioner had checked into a detoxification facility the night before the hearing. The circuit court denied the request, however, due to petitioner's failure to inform her counsel, the DHHR, or the circuit court regarding her admission; her failure to seek treatment prior to the hearing; and her continued drug abuse and related criminal offenses during the pendency of the case.

The DHHR presented the testimony of a DHHR worker, who was also a former service provider for petitioner. The worker testified that petitioner was offered services following a prior referral, such as safety services and parenting classes. However, petitioner failed to stay enrolled in a treatment program and continued to abuse drugs. A law enforcement officer testified that, upon searching petitioner's home, he found drug paraphernalia such as pipes and needles within the reach of the children. Finally, a CPS worker testified that petitioner initially failed to submit to drug screens. When petitioner began submitting to drug screens, she tested positive for methamphetamine every time and also recently tested positive for ecstasy and cocaine. The worker further testified that petitioner filled out applications for treatment centers and stated she intended to admit herself, but he had no confirmation that she had done so.

After hearing evidence, the circuit court found that petitioner had a long-standing drug abuse problem and, despite having received services several times, failed to successfully treat the issue. Petitioner also failed to treat her mental health issues, continued to abuse drugs throughout the proceedings, and continued to associate with inappropriate people despite the removal of her children. Finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the

_____

[2]Petitioner has an extensive history with both CPS and the criminal justice system that dates back to 2006. She was provided services with regard to both her criminal cases and her prior abuse and neglect referrals.

children's welfare, the circuit court terminated petitioner's parental rights. It is from the August 9, 2018, dispositional order that petitioner appeals.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights without granting her an improvement period. Petitioner contends that she should have been granted an improvement period because she was "working on" the conditions of abuse and neglect by drug screening regularly, seeking inpatient treatment, and maintaining contact with the DHHR. Alternatively, petitioner argues that she should have been granted disposition pursuant to West Virginia Code § 49-4-604(b)(5) so that she could regain custody of the children if she ever rectified the circumstances of abuse and neglect.[4] We disagree.

---

[3]The parental rights of the fathers of N.B. and I.L. were terminated below. The father of C.C.-1 and C.C.-2 relinquished his parental rights. N.B. and I.L. are currently undergoing treatment for behavioral issues. A foster family has been found that intends to adopt both C.C.-1 and I.L. following his release from treatment. The DHHR is currently searching for an adoptive placement for N.B. and the permanency plan for the child is adoption pending his release from treatment. C.C.-2 was placed in a separate foster home and the permanency plan for that child is adoption therein.

[4]West Virginia Code §49-4-604(b)(5) sets forth that

> [u]pon a finding that the abusing parent . . . [is] presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the state department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

3

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements."). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the respondent to demonstrate 'by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period. . . .'" *In re Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Here, petitioner failed to demonstrate that she was likely to fully participate in an improvement period. Petitioner failed to attend the dispositional hearing and, as such, failed to provide any testimony as to how she would have participated in an improvement period. Further, the record establishes that petitioner was granted services in prior criminal cases and during other CPS involvement, but failed to successfully treat her drug abuse problem. During the underlying proceedings, petitioner was arrested twice on drug-related charges and tested positive for drugs every time she submitted to screens. She continued to associate with inappropriate persons and failed to address her issues with mental health or drug abuse. While petitioner insists she admitted herself to a detoxification facility the day prior to the hearing, there is no evidence supporting such an assertion other than her own self-serving statements. Accordingly, we find that the circuit court did not err in denying petitioner a post-adjudicatory improvement period.

We further find no error in the circuit court's decision to terminate petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. According to West Virginia Code § 49-4-604(c)(1), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent or parents have habitually abused or are addicted to alcohol . . . to the extent that proper parenting skills have been seriously impaired and the person or persons have not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning[.]

As discussed above, the record establishes that petitioner had a long-standing drug abuse problem that she failed to address despite having been granted extensive services prior to the underlying proceedings. Here, petitioner initially failed to submit to drug screens and then tested positive for methamphetamine each time that she submitted, failed to timely enter a treatment program, and was twice arrested on drug-related charges. While petitioner argues that the circuit court should have granted her disposition pursuant to West Virginia Code §49-4-604(b)(5), we have previously held that

4

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va. Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Based on the foregoing, we find that the circuit court did not err in terminating petitioner's parental rights.

Lastly, because a permanent placement has not yet been found for N.B., this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

[t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

[i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

5

For these reasons, we find no error in the decision of the circuit court, and its August 9, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  January 14, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison